FILED
2025 Jan-03  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

**SHERIFF JONATHAN BENISON, The Sheriff and Sole Constitutionally-Mandated Regulator of Bingo in Greene County, Alabama,**

                **Plaintiff,**

**v.**

          **Civil Action No.:  _____**

**STEVEN T. MARSHALL, In His Individual and Official Capacity As Attorney General of The State of Alabama,**

          **Defendant.**

---

## COMPLAINT

This case seeks injunctive and declaratory relief against Steven T. Marshall, the Alabama Attorney General ("the Defendant"), enjoining the unequal and racially discriminatory administration and application of the law in majority African American counties, such as Greene County; versus in majority White counties, such as Houston County, through the filing of racially targeted lawsuits and the taking of other actions described herein.

## INTRODUCTION

As will be demonstrated herein, the Defendant has engaged in selective and racially discriminatory enforcement of the laws, aggressively targeting the plaintiff, African American Sheriff Jonathan "Joe" Benison ("Sheriff Benison"), and the primarily African American population of Greene County, Alabama, while giving preferential treatment and deference to his comparator, Caucasian Sheriff Donald Valenza, and the predominantly Caucasian population of Houston County, Alabama. These actions have a discriminatory intent:

1. They undermine the self-determination of Greene County's residents and frustrate their lawful efforts to combat poverty, improve healthcare, enhance educational opportunities, build a better future, and generally serve the public's interests.

2. Even absent a discriminatory intent, the Defendant's actions have disparately impacted Sheriff Benison and residents of Greene County.

3. The Defendant's actions have been imposed arbitrarily and capriciously against the Plaintiff.

The very nature of the Defendant's actions—his selective enforcement of laws, his interference with the community's right to regulate its own affairs, and his disregard for the economic and social needs of a historically marginalized population—constitute violations of the Equal Protection Clause of the Fourteenth Amendment, the Commerce Clause, 42 U.S.C. § 1985, and 42 U.S.C. § 1983.

This Complaint seeks to hold the Defendant accountable for his discriminatory conduct and to protect the rights of the people of Greene County. As such, Sheriff Benison seeks redress for these constitutional violations and demands that the Court take immediate action to stop the Defendant's unlawful and unconstitutional interference with Sheriff Benison's and the residents of Greene County's pursuit of justice, economic opportunity, and equality.

<u>JURISDICTION</u>

This is an action at law to redress the deprivation of constitutional rights under color of statute, ordinance, regulation, custom or usage of a right secured to Sheriff Benison by the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution, by 42 U.S.C. § 1985 and 1983, and by 28 U.S.C. § 1331, specifically the Dormant Commerce Clause, and the law and statutes of the State of Alabama. Accordingly, the jurisdiction of this Court is invoked under 28 U.S.C. §1343(a)(3), and 28 U.S.C. § 1367 for any applicable pendent state law claims. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the events giving rise to these claims occurred in this jurisdiction.

Federal jurisdiction over this matter is warranted and imperative because as set forth herein, the Defendant is engaged in a bad faith, racially discriminatory prosecution and harassment of Sheriff Benison. The Defendant's application of the law with regard to Constitutional Amendment 743 ("C.A. 743") and his interference

with Sheriff Benison's execution of his constitutionally-mandated regulatory and enforcement powers are flagrantly and patently unconstitutional and threaten irreparable harm to Sheriff Benison and Greene County as a whole that is both great and immediate.

## PARTIES

1.  The Plaintiff, Sheriff Benison, is African American, over the age of 19 years, and is the duly elected Sheriff of Greene County, Alabama. Sheriff Benison began his first elected term in January 2011. Sheriff Benison is now and has been a lifelong resident and citizen of Greene County, Alabama.

2.  The Defendant, Steven T. Marshall, is the Attorney General of the State of Alabama.  He is sued in both his individual and his official capacities.  The Defendant is and has been at all times material to this Complaint a resident citizen of Alabama; and, upon information and belief, maintains a permanent residence in Marshall County, Alabama. He is Caucasian and over the age of 19 years.  All of the Defendant's actions described herein were performed under color of state law.

## BACKGROUND

3.  C.A. 743 is an amendment to the Alabama Constitution allowing electronic bingo in Greene County.  It was overwhelmingly ratified by the people of Greene County on November 4, 2003 and became the governing law related to bingo in

Greene County.[1] Thereafter, pursuant to C.A. 743, electronic bingo lawfully commenced being played in Greene County.

4. C.A. 743 states, in pertinent part: ""The sheriff shall promulgate rules and regulations for the licensing, permitting, and operation of bingo games within the county. The sheriff shall insure compliance with such rules and regulations." Pursuant to Article V of the Alabama Constitution, sheriffs are constitutional officers.

5. No other government official is identified by C.A. 743 (or elsewhere in state law) as having any power or authority to regulate, interpret, oversee, or enforce the law related to bingo in Greene County.

6. Throughout his time in office, Sheriff Benison has faithfully and competently executed and performed his duties under and consistent with C.A. 743 and the law of Alabama by both promulgating a set of Bingo Rules and Regulations and ensuring compliance with them.  During that time and in fulfilment of those responsibilities, Sheriff Benison has been required to suspend bingo operational privileges, to deny licenses to operate, to investigate applicants' suitability for licensure, promulgate and amend regulations, and to take other regulatory actions. Sheriff Benison thereby assures that the bingo facilities that operate in

---

[1] Upon information and belief, Amendment 743 was ratified by the people of Greene County by a four-to-one majority.

Greene County do so legally, peaceably, and safely and that they serve the charitable purposes of C.A. 743 and the needs of the citizens of Greene County[2].

7. Greene County is not the only local geographical area of Alabama in which bingo may be operated. Multiple constitutional amendments authorize other local governmental entities within the State of Alabama, including Houston County, to operate bingo in various forms.

8. Greene County is, however, the <u>only</u> local governmental entity with a constitutional amendment allowing the play of <u>electronic</u> bingo.  C.A. 743 specifically and explicitly provides for the use of electronic equipment in the play of bingo within the county.  The definition in C.A. 743 of "allowed equipment" is as follows:

> "The receptacle and numbered objects drawn from it, the master board upon which such objects are placed as drawn, the cards or sheets bearing numbers or other designations to be covered and the objects used to cover them or ***electronic card marking machines***[3], and the

---

[2] Greene County is widely believed to be the poorest county in Alabama. In 2020, the median household income was $28,584.  As of 2020, the population of Greene County was approximately 81.8% African American and 17.1% Caucasian. The total population of Greene County is approximately 7,341.

[3] Sheriff Benison's duly enacted <u>Rules and Regulations for the Operation of Bingo Pursuant to Amendment 743 to the Constitution of Alabama of 1901 in Greene County, Alabama</u> ("the Rules") adopted the definition of an "electronic marking machine" found in the patent for an "electronic marking machine" and incorporated it into the definition of "Bingo Equipment" in the Rules as follows:

> **Bingo Equipment.** Any electronic or mechanical equipment, machine or device, software, including Entertainment Phase games for play during a Bookend Bingo Session, or computer or other technologic hardware or device

board or signs, **however operated**, used to announce or
display the numbers or designations as they are drawn."

(emphasis added). Houston County's amendment contains no such language.

9.    In 2011, Luther Strange took office as Attorney General for the State of

Alabama and began an attack on Greene County bingo, conducting large-scale

raids in Greene County throughout his term in office.

10.    In response to one such raid in 2014, Congresswoman Terri Sewell stated that

"[t]he people of Greene County have been repeatedly targeted by the State in

politically motivated raids in violation of their constitutional rights."

11.    On November 5, 2015, then-Governor Robert Bentley issued Executive Order

No. 13, which recognized the constitutional delegation of the enforcement of

---

(including an electronic player station or player terminal), (i) which is installed,
or is to be installed at a Bingo Facility and (ii) which is used, or can be used,
to play Bingo as herein defined. Bingo Equipment includes any machine,
device or hardware that assists a player or the playing of Bingo games (and it
is this "machine" which assists a player in the playing of a bingo game that is
referred to in Section 5), broadens the participation levels in a common game
and includes all the ancillary Bingo supplies. Examples of Bingo Equipment
include, but are not limited to, software, dispensers, readers, electronic player
stations, player terminals, central computer services containing random
number generators and other processing capabilities for remote player
terminals, electronic consoles capable of providing game results in different
display modes, telephones and telephone circuits, televisions, cables and other
telecommunication circuits, and satellites and related transmitting and/or
receiving equipment. All of these aforementioned items may also be known,
when linked together, separately or severally, as "electronic marking
machines" or may be part of the "electronic marking machine." Bingo
Equipment shall not be deemed to be, for any purpose. a "gambling device" or
"slot machine" within the meaning of the Code of Alabama 1975, § 13A-l 2-
20 (5) and (10) or any other provision of law, whether now in effect or hereafter
enacted.

Alabama's bingo laws to local officials, including Sheriff Benison.  This order was intended to halt the usurpation of constitutionally delegated powers and the racially discriminatory application of bingo laws by the state, and to restore the constitutionally-mandated local control over enforcement.  With it, constitutional balance was restored and the state-led raids ceased.

12. The Defendant was sworn in as Alabama's Attorney General on February 10, 2017.

## **FACTS**

13. John Kachelman ("Kachelman"), a Deputy Attorney General, has been vested by the Defendant with leading the investigatory efforts, the litigation, and the oversight of the operation of bingo within Alabama, including reviewing gameplay to rule on whether it complies with state law or not.  At all times relevant to this Complaint, Kachelman was an agent of the Defendant, acting with his express authority.  Upon information and belief, Kachelman has no special training or knowledge to make technical evaluations of software.

14. On October 4, 2017, the Defendant filed a civil nuisance action entitled *State v. Pen-Tech Associates, Inc., and Sheriff Benison, et al*., CV-2017-900064, in Greene County Circuit Court ("*Pen-Tech* case"). The *Pen-Tech* case seeks a judgment that the bingo games being played in Greene County are a nuisance because they violate the criminal laws of Alabama and should be permanently

enjoined from operating. The Defendant sued Sheriff Benison in addition to the charities which operate and offer bingo at their facilities. However, there are no specific allegations in the Complaint describing what, if anything, the Defendant alleges Sheriff Benison to have done wrong to warrant his inclusion as a defendant.

15. In his Answer to the Complaint, Sheriff Benison denied any wrongdoing and pled certain affirmative defenses, including the denial of his equal protection, due process, and privileges and immunities rights by the State.

16. The Defendant has aggressively pursued the litigation in the *Pen-Tech* case, steadfastly maintaining in pleadings, statements made in open court, and correspondence with defense counsel that the game of bingo cannot be played on electronic machines in the State of Alabama.  Moreover, he has instructed the investigators he tasked with investigating Greene County bingo for the *Pen-Tech* case that if a bingo device plugs into the wall and uses electricity, it is illegal[4].

17. By aggressively pursuing the *Pen-Tech* case, the Defendant has harmed Greene County and Sheriff Benison, and the injunction the Defendant seeks would, if

---

[4] The Defendant tasked investigators in his office with investigating Greene County bingo for the *Pen-Tech* case, but failed to ensure those investigators were trained or otherwise made aware of the applicable law.  None of the State's investigators reviewed C.A. 743 prior to undertaking their investigation, nor were they aware that C.A. 743 expressly allowed "electronic marking machines."

issued, irreparably damage Greene County and Sheriff Benison[5].  The matter is currently set for trial on January 6, 2025.

18.    The Defendant's decision to pursue Greene County bingo in a civil forum and, particularly, his decision to single out Sheriff Benison as a defendant in that litigation, constitutes a procedural departure from the norm.  While Alabama law once had a statute that specifically authorized the Attorney General to seek an injunction to abate a public nuisance involving illegal gambling, that statute was repealed in 1977 and removed from the Code of Alabama in 1978.  In its absence, the Defendant has, nevertheless, relied on Alabama case law from 1938 as a basis for filing this action in the absence of a statute.  State investigators working on the case have testified that this is the only civil case they have worked on in their entire careers, with others being unaware that the underlying case was civil in nature until they were so told by the lawyers for the defendants during the agents' depositions.

19.    Simultaneously with the institution of this case, also on October 4, 2017, the Defendant filed suit in Houston County, Alabama, seeking to terminate the play

---

[5] Electronic bingo in Greene County, Alabama, is essential to the wellbeing, health and welfare of the people of Greene County in that the people of Greene County, the poorest county in Alabama, can thrive only through the use of bingo-generated funds which are available and obtained by way of assessments made by the Sheriff's Office pursuant to his duly enacted Recompiled Bingo Rules and Regulations.  Sheriff Benison's assessments provide critical funding, by way of example, for the Greene County Hospital, the Greene County Board of Education, and the Greene County ambulance service.  The Greene County Hospital has stated that its closure will be imminent if they stop receiving bingo funds.

of electronic bingo at a location there called Center Stage. *State of Alabama v. Houston Economic Development Authority (HEDA) d/b/a Center Stage Bingo and the Houston County Commission*, CV-2017-900541 ("*HEDA* case").

20. Through the discovery process in the *Pen-Tech* case, Sheriff Benison has uncovered numerous undisputed facts related to the Defendant's handling of the *HEDA* case and demonstrating that the Defendant's racially discriminatory behavior and motives.

21.  Houston County's sheriff, Donald Valenza, was not sued as a Defendant in the *HEDA* case.  Sheriff Benison, however, was sued in the *Pen-Tech* case.

22.  Instead, the Defendant communicated, advised, and consulted with Sheriff Valenza, a Caucasian sheriff, about his investigation of HEDA and Center Stage Bingo both *before and after* filing the *HEDA* case.

23. The Defendant did not afford the same procedures or privileges to Sheriff Benison, the African American sheriff in Greene County.   Neither the Defendant nor anyone at his request or direction has ever notified, alerted, consulted, or even communicated with Sheriff Benison or his office about

bingo in Greene County[6], except to serve a subpoena upon him and his office for records[7].

24. Upon information and belief, no such subpoena was issued against Sheriff Valenza in Houston County.

25. Unlike the aggressive and hostile strategy deployed in the *Pen-Tech* case in Greene County, the Defendant did not aggressively litigate the *HEDA* case in Houston County. Instead, the Defendant quickly began negotiating and then entered into a settlement with Houston County, culminating with the filing of a Motion to Continue the September 10, 2018, trial setting to consummate the settlement agreement. The reason stated for the requested continuance was to allow HEDA to implement certain provisions in the agreement before other provisions related to future play could take effect.     Upon information and belief, the settlement was negotiated between the parties and permits Houston County to operate games that are virtually indistinguishable from the games

---

[6] Investigator Richard Windham, discussed more *infra*, testified in his capacity as Marshall's 30(b)(6) representative in the *Pen-Tech* case that while Defendant has a good working relationship with Sheriff Valenza, he does not have a good working relationship with Sheriff Benison. He does not know why. When asked who would know why there was not a good relationship, he deferred to Marshall.

[7] Upon information and belief and based upon the testimony in *Pen-Tech* of agents of Defendant, this was not a subpoena issued for criminal investigative purposes. It was issued in 2020.

they challenged in Greene County, affirming the racially motivated preference for White Houston County over African American Greene County.

26. The Defendant and his agents negotiated and then supervised compliance with this agreement for Defendant, allowing HEDA to remove certain bingo games from Center Stage in Houston County but also allowing HEDA to thereafter commence play with other electronic games that are not materially different from the electronic bingo games being played in Greene County, Alabama. These electronic games, including electronic bingo, continue to be played in Houston County to this day and have been played without interruption under the supervision of the Defendant.

27. Even when Kachelman has deemed a game in Houston County to be noncompliant with the law, Defendant has not raided them or forced their closure. Instead, he has granted them a cure period, a courtesy he has never extended to any of the African American-operated facilities in the African American counties.

28. The Defendant has been and continues to rely upon Sheriff Valenza to periodically video the play of the electronic bingo machines in Houston County. Sheriff Valenza's office sends the videos to the Defendant, who has Kachelman review them and make a subjective (and unqualified) "determination" that the

games being played are consistent with the settlement agreement. These games are indistinguishable from the games being played in Greene County:

 

Above left: electronic bingo games in Houston County, where the local constitutional amendment does ***not*** provide for the use of electronics in the play of bingo, in 2024. These games have been approved and deemed legal by Kachelman. Above right: electronic bingo games in Greene County, where C.A. 743 ***expressly allows and provides for*** the use of electronic marking machines. Despite the express constitutional permission to operate "electronic marking machines," Kachelman has deemed these games illegal because they plug into the wall.

29. Richard Windham, one of the Defendant's investigators, was designated as Marshall's 30(b)(6) representative in the *Pen-Tech* case. During a March 19, 2024, deposition, Windham testified that the enforcement of the settlement

agreement in Houston County has been delegated to the Sheriff Valenza, who may ask for assistance from the Attorney General's office from time to time. Windham also testified that the Attorney General has not felt the need to go into Houston County to check the validity of the machines since 2019 and <u>that the State has no intention of doing so</u>.

30. In contrast to the six years of unfettered deference given to Sheriff Valenza since entering into the settlement agreement that was favorable to Houston County bingo operators, the Defendant continues to aggressively seek to shut down the operators in Greene County and to interfere with and enjoin Sheriff Benison from fulfilling his constitutional mandate to regulate bingo in Greene County. In fact, when African American operators requested to enter into and operate pursuant to a settlement agreement identical to the one executed by the Defendant in Houston County, Kachelman told them that "there will be no more settlements."

31. Windham also testified as the 30(b)(6) representative of the Defendant that, if *Pen-Tech* were settled, Sheriff Benison would not be afforded the same deference to regulate bingo in his county as Sheriff Valenza has been given in Houston County. He later slightly changed that testimony and said that Sheriff Benison would be relied upon for enforcement <u>initially</u>, signaling either a predisposition by the Defendant against allowing an African American sheriff

to hold such a position or a preordained bias that an African American sheriff would not be able or willing to do the job.

32. Windham, as the Defendant's representative, testified that, in light of the 2018 settlement of the *HEDA* case, state investigators, at the direction of Kachelman, went back to Houston County in 2019 and looked at the bingo games. At that time, they concluded that at least some of the electronic machines being operated <u>were not in legal compliance</u>. However, the Defendant took no action to stop Houston County from offering the play of these games, nor did he take any adverse actions against Sheriff Valenza. To the contrary, one state investigator testified that the 2019 meeting was "very casual" and even "friendly." Upon information and belief, the same types of electronic bingo games are still being played in Houston County at the time of this filing.

33. Sheriff Benison and the other *Pen-Tech* Defendants asked to be allowed to settle the *Pen-Tech* case under identical settlement terms as those agreed upon by the Defendant in the Houston County *HEDA* case, but the Defendant refused[8].

---

[8] In March 2024, Kachelman--who had explained in open court officially and to attorneys in the *Pen-Tech* case privately that he was tired of being called a racist--presented a pretextual, bad-faith settlement offer to the Greene County charity Defendants. Kachelman presented the offer for the sole purpose of quelching Greene County's equal protection defense. The empty settlement offer contained terms that were materially different and far less favorable than the terms of settlement in Houston County, to wit: a) the Greene County offer mandated the immediate cessation of operation of all machines in the county and removal of same within 14 days while the Houston County settlement did not mandate immediate cessation and allowed 24 days to remove only *some* of the machines; b) the Greene County offer mentions potential criminal prosecution and the Houston County settlement does not; c) the Greene County offer

34. On October 4, 2017, the date of the filing of the *HEDA* case, the Houston County Commission was all Caucasian. Donald Valenza, the Sheriff of Houston County, is Caucasian. The same was true when the parties entered into the settlement agreement in 2018. Houston County is a Caucasian majority county (64.9%) controlled by that Caucasian majority. As such, it enjoys the racially discriminatory favor of the Defendant.

35.  Sheriff Benison and many of his primary staff members are African American. While Houston County has a population that is approximately 65% Caucasian, Greene County has a population that is approximately 82% African American.

-------

has a liquidated damages provision with a seven-day window to cure any perceived breaches of the settlement agreement before it's exercised while Houston County was given 14 days; and d) the Greene County offer states that the State will not be precluded "from enforcing State laws against illegal gambling or any other civil or criminal offense(s)" if the settlement agreement is violated while the Houston County settlement contains no such language. The Defendant engaged in negotiations with HEDA. No similar opportunity to negotiate was offered to Sheriff Benison or the other Pen-Tech Defendants.

In addition to being materially different and less favorable than the settlement terms entered into in the *HEDA* case in Houston County, Kachelman refused to engage in any mediation or further discussion of the empty offer of settlement.  Of further note, he refused to extend the settlement offered to the charity Defendants to Sheriff Benison and would not even provide Sheriff Benison with a copy of the proposed terms.  Rather, Kachelman stated that he would settle the case with Sheriff Benison only if the following two conditions were met:  1) that Sheriff Benison give up all of the assessment revenue that he was receiving and distributing to charitable and nonprofit entities in Greene County, undoing the entire basis for C.A. 743's introduction, passage by the Legislature, and ratification by Greene County voters; and 2) that Sheriff Benison enforce the law in a manner consistent with the way the Attorney General wanted it to be enforced, in direct violation and conflict with C.A. 743, which mandates that Sheriff Benison is the sole regulator of Greene County bingo. Kachelman also told Sheriff Benison's attorney that he would agree to any settlement terms that would make bingo unprofitable. That, of course, is not a proper legal standard.  It is, in fact, no standard at all.

The charities that operate bingo in Greene County are operated predominantly by African American people. The charitable purposes that are fulfilled by the play of electronic bingo in Greene County, benefit the African American and poverty-stricken citizens of Greene County.

36.  In addition to the disparate racially discriminatory treatment between Sheriff Benison/Greene County and Sheriff Valenza/Houston County, the Defendant has exhibited a longstanding and ongoing pattern and practice of disparate, racially discriminatory treatment regarding the enforcement of bingo laws within the State of Alabama, with a clear divide between their enforcement efforts in predominately Caucasian counties with a Caucasian sheriff and in predominantly African American counties with an African American sheriff. Such racial discrimination violates the basic American rule that the law must be the same for black and white people alike.

37. In October 2017, the Defendant also filed civil nuisance actions, similar to those filed against Greene and Houston Counties, and described *infra* in Morgan, Macon, and Lowndes Counties.

38. Morgan County's population is 71.49% Caucasian according to 2020 census data, and their sheriff in 2017, Ana Franklin[9], was also Caucasian.  The Defendant did not sue Franklin in the Morgan County lawsuit.

39. According to 2020 census data, 78.82% of Macon County's population is African American, and its sheriff, Andre Brunson, was African American in 2017. The Defendant sued Brunson in the Macon County lawsuit.

40. According to 2020 census data, 69.8% of Lowndes County's population is African American, and its sheriff, John Williams, was African American in 2017.

41. Moreover, the Defendant has publicly maintained that the electronic machines at the Birmingham Race Course, owned by the wealthy Caucasian McGregor Family, are legal despite being essentially identical to the games played in Greene County.

42. Like the games in Greene County, they also plug into the wall[10];

---

[9]  At the time that the Defendant filed the Morgan County lawsuit, Franklin was the subject of multiple investigations related to her use of Morgan County funds, some of which she embezzled for personal use.  She later pled guilty to tax crimes.

[10] The Defendant has made much ado about his commitment to the rule of law as the impetus of his office's enforcement actions. In reality, that commitment is selective and disparately directed at perpetuating Alabama's longstanding biases. The photographs above belie their "duck argument." Each machine is indistinguishable from the other, yet the Defendant finds one allowable (parimutuel game) and the other an intolerable nuisance justifying the expenditure of millions of dollars to stop (bingo game).  In fact, the games are more similar than the Defendant is willing to acknowledge.  In 1947, in Opinion of the Justices No. 80, the Alabama Supreme Court held that meaningful player involvement is essential to a parimutuel wager.  The Supreme Court similarly dictated that player interaction was an essential element



43. The Defendant's discriminatory enforcement of bingo laws is driven by racial animus.

44. In November 2024, one Greene County bingo facility's white landlord evicted its charitable license holder and, like the McGregors, announced plans to switch to "historical horse racing." The Alabama Supreme Court has previously explained that pari-mutuel betting is not a lottery prohibited pursuant to section 65 of the Constitution because it requires an exercise of skill:

> A significant degree of skill is involved in picking a winning dog, such factors as weight, paternity, trainer, position, past record, wet or dry track, etc. all must be considered.

Opinion of the Justices No. 205, 251 So.2d 751, 753 (1971). Despite these "historical horse racing" machines' failure to incorporate any of the elements required by the Alabama Supreme Court's test, and with gameplay on these

---

of a bingo game. See *Riley v. Cornerstone Community Outreach, Inc.*, 57 So. 3d 704 (Ala. 2010). The Defendant's prejudice has led them to turn a blind eye to the conduct of non-African American parties while crippling African American parties for the same or similar conduct. Their wielding of this double standard not only threatens to extend Alabama's sorry record of unlawful racial discrimination but to devastate marginalized communities in the process.

machines that is indistinguishable from a slot machine, the Defendant did not seek to enjoin their operation in Greene County. Instead, he moved to voluntarily dismiss the charity from the *Pen-Tech* case and turned a blind eye to the white landlord's own conduct with games indistinguishable from those he has declared to be nuisances.

45. On December 30, 2024, once it was clear that the Defendant was not going to interfere with the white-owned operation called "Palace Live," Sheriff Benison took action to close the illegal gaming facility that the Defendant had dismissed from the *Pen-Tech* case but which he was allowing to operate in Greene County.

46. Sheriff Benison, an African American, is the duly elected Sheriff of Greene County and the sole constitutional regulator of bingo in the county. He has engaged in protected activity, including publicly speaking out about the Defendant's unequal enforcement of bingo laws and asserting and pursuing an equal protection defense in the *Pen-Tech* case.

47. The Defendant has engaged in retaliatory actions against Sheriff Benison, aimed at silencing his advocacy for equitable enforcement and punishing him for asserting his constitutional rights. To wit, the Defendant has sued Sheriff Benison in civil court and aggressively pursued the *Pen-Tech* litigation without any offer of settlement or compromise similar to the one the Defendant gave Sheriff Valenza in Houston County. The Defendant has also investigated

Greene County bingo facilities without consulting with or involving Sheriff Benison and issued an extensive and onerous subpoena for documents to Sheriff Benison in 2020.

48. The Defendant has aggressively sought to close lawful electronic bingo operations in Greene County that benefit the public and sustain essential public services like the hospital and public education, but has ignored their comparator, a white-owned, for-profit operation that operates solely for the benefit and financial enrichment of its white owners.

49. As a proximate result of the Defendant's racially discriminatory and retaliatory actions against Sheriff Benison, Sheriff Benison and his Greene County constituents he was elected to serve have been irreparably harmed and caused to suffer damages.

## COUNT I: VIOLATION OF EQUAL PROTECTION PURSUANT TO THE 14TH AMENDMENT AND 42 U.S.C. § 1983 AGAINST MARSHALL IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES ("Disparate Administration/Application") *(Yick Wo v. Hopkins, 118 U.S. 356 (1886))*

50. Sheriff Benison adopts, realleges, and incorporates by reference paragraphs 1-49 as if fully set forth herein.

51. The Equal Protection Clause of the 14th Amendment, enforceable under 42 U.S.C. § 1983, prohibits the Defendant from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

52. The manner by which the Defendant has administered and applied the laws regarding bingo is racially discriminatory. This discrimination deprives Sheriff Benison and the citizens of Green County of their rights secured by the Fourteenth Amendment. In *Yick Wo* and *Gomillion*, the court found that the government had administered and applied the law in favor of whites and against Chinese and blacks, respectively.

53. The Defendant's race-conscious exercise of selective enforcement with regard to charity bingo is deliberately based upon an unjustifiable standard, to wit: race.

54. Although the applicable law is race neutral on its face, there is direct or circumstantial evidence of intent to cause a racially-disproportionate impact and an inference of a discriminatory purpose.

55. Sheriff Benison and Sheriff Valenza are prima facie identical in all other relevant respects.

56. Defendants have intentionally treated Sheriff Benison differently than his similarly situated counterpart, Sheriff Valenza.

57. The Defendant's differential treatment of Sheriff Benison amounts to racially discriminatory purpose.

58. The Defendant's disparate and racially discriminatory treatment of Sheriff Benison cannot hold up to strict scrutiny.

59.  The Defendant has committed the following acts exemplifying the disparate treatment and racial intent between Sheriff Benison and his comparator, Sheriff Valenza:

   a.  Consulting with Caucasian Sheriff Valenza regarding the regulation and enforcement of bingo but refusing to do so with African American Sheriff Benison.

   b.  Naming African American Sheriff Benison as a defendant in the civil nuisance suit in Greene County, but not naming Caucasian Sheriff Valenza or Caucasian Sheriff Ana Franklin, respectively, as a defendant in the Houston and/or Morgan County nuisance suit(s).

   c.  Entering into a favorable settlement agreement regarding charity bingo with the primarily Caucasian Houston County, but refusing to offer the same terms to predominantly African American Greene County.

   d.  Deferring to Caucasian Sheriff Valenza to ensure ongoing compliance with bingo laws, but not giving the same deference to African American Sheriff Benison.

   e.  Entering into a fig-leaf settlement agreement with Houston County for the purpose of permitting operations there to continue while zealously seeking the ruination of Greene County through the application of a different rule of law.

60. Direct statements from Investigator Windham evince the clear racial animus of the Attorney General's office.

61. The Defendant, in his racially based disparate treatment of Greene County and Sheriff Benison, set in motion a series of acts while knowing of the likelihood of constitutional harm to others.

62. Sheriff Benison claims all damages allowable under law.

## COUNT II: VIOLATION OF EQUAL PROTECTION PURSUANT TO THE 14TH AMENDMENT AND 42 U.S.C. § 1983 AGAINST MARSHALL IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES ("Disproportionate Impact")

63. Sheriff Benison adopts, realleges, and incorporates by reference paragraphs 1-49 as if fully set forth herein.

64. The Equal Protection Clause of the 14th Amendment, enforceable under 42 U.S.C. § 1983, prohibits the Defendant from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

65. The Defendant's bingo enforcement policies with regard to the charity bingo in Greene County are facially neutral.

66. The Defendant's charity bingo enforcement actions and policies as administered and applied to the Plaintiff have disproportionately impacted Sheriff Benison and the citizens of Greene County. As in Washington v. Davis | 426 U.S. 229 (1976) and Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252 (1977 and Personnel Administrator of Massachusetts

v. Feeney, 442 U.S. 256 (1979) and Rogers v. Lodge, 458 U.S. 613 (1982), where the Supreme Court held that even where the law is race neutral, if it creates a disproportionate impact, the parties can prove discrimination by direct or circumstantial evidence. The evidence here includes, at least, that Marshall has applied different standards, offered more favorable settlement terms to white operators, and deviated from normal procedures and created a disparity favoring white and Indian operators and counties over black ones. The effect of the Defendant's actions has deprived Sheriff Benison and the citizens of Greene County of their rights secured by the Fourteenth Amendment.

67.  A direct comparison of the State's enforcement of bingo laws in Houston County and Greene County clearly highlights the disparity between the two counties, both racially and financially.  At the outset, it is worth considering various data points about each county according to the most recent Census information:

|  | HOUSTON | GREENE |
|---|---|---|
| Percentage of African American population | 27.7% | 79.6% |
| Percentage of citizens holding a bachelor's degree or higher | 22.5% | 16.7% |
| Percentage of people with a disability | 12.6% | 21.5% |
| Percentage of persons at or | 19.1% | 33.2% |

| | | |
|---|---|---|
| below poverty line | | |
| Total number of employer establishments | 2,776 | 95 (5 of which were/are charity bingo facilities at time of report) |
| Median household income | $55,064 | $32,796 |

68.  Greene County is one of the poorest counties in Alabama, with a median household income of less than half ($29,000) of the average median income in Alabama ($60,000).

69.  Greene County Health System ("GCHS") is the only hospital in Greene County.

70.  Approximately 40% of the patients receiving medical care at GCHS do not have health insurance.

71.  GCHS is heavily reliant on funds generated by electronic bingo to keep its doors open.

72.  On an average month, GCHS receives approximately $70,000.00 (seventy-thousand dollars) from charity bingo funds.

73.  There is no alternative revenue that could replace the funds received from charity bingo.

74. The Defendant's bingo enforcement actions and enforcement policies as applied to Sheriff Benison have harmed or adversely impacted Sheriff Benison and the citizens of Greene County in at least the following ways listed below.

    a. Following the Defendant's actions described herein (*Pen-Tech* case initiated on October 4, 2017), the backlash in Greene County was instantaneous, with multiple community meetings held to discuss the potential impact of the State's action.

    b. Eutaw's mayor stated that "This is going to be devastating for Eutaw and Greene County.  There is no growth or new business in our area besides gaming.  If the Supreme Court and the State taking away bingo what will we have left."

    c. Elmore Patterson, CEO of the Greene County Health System, warned that the hospital and nursing home would be forced to close without the revenue from bingo.

    d. Dr. Carol Zippert from the Greene County School Board stated that "this is a voting rights issue."  While the State was quick to enter into a settlement with predominantly white Houston County the year after filing suit, the case against Greene County drags on today with no comparable settlement offered.

e.   Funding for healthcare, education, and other essential services in the Greene County community will be endangered and effectively eliminated if the critical revenue derived from bingo is lost. The residents of Greene County will face inadequate healthcare, poor education, and a lack of basic services.

f.   The loss of revenue for Greene County will trigger a near-immediate closure of the hospital and will surely lead to a loss of lives.

g.   The Defendant's actions not only perpetuate systemic racial and economic oppression, but also undermine the ability of local officials like Sheriff Benison to serve the best interests of our communities.

h.   The Defendant's actions are blatantly oppressive and prevent the people of Greene County from exercising their right to utilize bingo to address their poverty, healthcare, and educational challenges.

75.   Sheriff Benison claims all damages allowable under law.

**COUNT III: VIOLATION OF EQUAL PROTECTION PURSUANT TO THE 14TH AMENDMENT AND 42 U.S.C. § 1983 AGAINST MARSHALL IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES ("Arbitrary and Capricious")**
*Morey v. Dowd, 354 U.S. 457 (1957)*

76.   Sheriff Benison adopts, realleges, and incorporates by reference paragraphs 1-46 as if fully set forth herein.

77. The Equal Protection Clause of the 14th Amendment, enforceable under 42 U.S.C. § 1983, prohibits the Defendants from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

78. The Defendant has engaged in the selective enforcement of bingo laws against Greene County arbitrarily and capriciously.   In particular, the Defendant's choice to invoke public nuisance law in a civil proceeding as an enforcement tool to stop charity bingo from providing funding for essential public services and serving as a means to mitigate the generational poverty that has plagued Greene County demonstrates a disregard for the constitutionally protected rights of Sheriff Benison and his constituents and it negates any pretextual arguments asserted by the Defendant that his actions serve any governmental interest. To be sure, pursuing these claims in civil court is an extraordinary action for the Attorney General's office.

79.  The statute that specifically authorized the Defendant to seek an injunction in order to abate a public nuisance involving alleged gambling was repealed in 1977 and taken off the books in 1978.  The Defendant thus had to resort to his novel theory by reviving an 80+ year old case, Try-Me Bottling Co. v. State, 178 So.231 (Ala. 1938) as the legal basis for bringing this case in civil court.

80.   The Defendant's employees and agents have testified in deposition that this "enforcement action" against charity bingo is the only civil case they have ever worked on.

81.   Some of the Defendant's employees and agents were not even aware the public nuisance action was related to a civil case until asked about it during their deposition.

82.   The Defendant's novel approach to pursuing the Greene County charity bingo operators civilly is undoubtedly a significant procedural departure.

83.   Further, while Defendant did filed an ostensibly similar civil case against Houston County, Defendant gave Houston County preferential treatment as discussed herein, including entering into a settlement never offered in Greene County, lax enforcement of the Houston County settlement, cooperation with/deference to the Houston County Sheriff, and continuing to allow nearly identical conduct to that being engaged in Greene County to continue unabated and unobstructed (and, in fact, even approvingly) in Houston County today.

84.   The Defendant's race-conscious exercise of selective enforcement with regard to charity bingo is based upon an arbitrary and capricious standard.

85.   Sheriff Benison and Sheriff Valenza are prima facie identical in all relevant respects.

86. The Defendant has treated Sheriff Benison differently than his similarly situated counterpart, Sheriff Valenza.

87. The Defendant's different treatment of Sheriff Benison amounts to intentional and arbitrary discrimination.

88. The Defendant has no rational basis for his different treatment of Sheriff Benison.

89. The Defendant has committed the following acts exemplifying the arbitrary and capricious treatment against Sheriff Benison as related to his comparator, Sheriff Valenza:

  a. Consulting with Caucasian Sheriff Valenza regarding the regulation and enforcement of bingo but doing the very opposite with African American Sheriff Benison.

  b. Naming African American Sheriff Benison as a defendant in his civil nuisance suit, but not naming Caucasian Sheriff Valenza or Caucasian Sheriff Ana Franklin, respectively, as a defendant in the Houston and Morgan County nuisance suits.

  c. Entering into a favorable settlement agreement regarding charity bingo with the primarily Caucasian Houston County but refusing to offer the same terms to predominantly African American Greene County.

d.  Deferring to Caucasian Sheriff Valenza to ensure ongoing compliance with bingo laws but not giving the same deference to African American Sheriff Benison.

e.  Entering into a fig-leaf settlement agreement with Houston County for the purpose of permitting operations there to continue while zealously seeking the ruination of Greene County through the application of a different rule of law.

f.  Continuing to allow nearly identical conduct to that being engaged in Greene County to continue unabated and unobstructed (and, in fact, even approvingly) in Houston County.

90.  The Defendant has committed the following acts and omissions exemplifying the arbitrary and capricious treatment against Sheriff Benison:

a.  Dismissing the public nuisance civil prosecution of one of the charity defendants in the *Pen-Tech* case when that facility started offering "historical horse racing" machines that are identical to electronic bingo machines.

b.  Allowing the Palace Live Facility to operate visually indistinguishable electronic gaming machines that the operators have explicitly stated are not electronic marking machines and that do not play bingo in

Knoxville, Greene County, AL in clear violation of section 65 of the Alabama Constitution.

c.  Instituting a civil lawsuit against Sheriff Benison and Greene County electronic bingo operators pretextually based on public nuisance theory while the operations of indistinguishable electronic gaming machines in predominantly Caucasian counties with Caucasian Sheriffs (and even Caucasian operators within Greene County) are permitted to continue.

d.  Instituting a civil lawsuit against Sheriff Benison and Greene County electronic bingo operators pretextually based on public nuisance theory while indistinguishable gaming machines are operated on tribal lands.

91.  Sheriff Benison claims all damages allowable under law.

**COUNT IV: VIOLATION OF DORMANT COMMERCE CLAUSE AGAINST MARSHALL IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES**
**(U.S. Const., Art. I, § 8, cl. 3.)**
(*Dean Milk Company v. City of Madison*, 340 US 349 (1951) and *New Energy Co. v. Limbach*, 486 U.S. 269 (1988))

92.  Sheriff Benison adopts, realleges, and incorporates by reference paragraphs 1-49 as if fully set forth herein.

93.  According to 2023 U.S. Census data, the average population of Alabama's 67 counties is 76,246, with Jefferson County as the most populous (662,895), and Greene County (7,341) the least.

94. Sheriff Benison has faithfully and competently promulgated and regulated the operation of charity electronic bingo in Greene County since the ratification of C.A. 743 on November 4, 2003.

95.  The operations of electronic bingo in Greene County are essential to the local economy and have funded critical services, including hospitals, emergency medical services, and community welfare programs.

96. The Defendant's enforcement and policies related to charity bingo, as applied to Sheriff Benison, constitute facial discrimination and an undue burden against interstate commerce and, as such, are invalid.

97. The Defendant's bingo enforcement policies with regard to the charity bingo in Greene County are facially neutral and those policies discriminate against Sheriff Benison, and black bingo operators of Greene County, and constitute an undue burden on interstate commerce.

98. The operation, provision, and administration of charity bingo, including electronic marking machines in the State of Alabama, substantially involves interstate commerce since extensive marketing is directed at interstate travelers and revenue from the operation of the facilities crosses state lines.

99. Despite the legality of charity electronic bingo operations in Greene County and Sheriff Benison's faithful and competent execution and performance of his duties under C.A. 743 and the law of Alabama, the Defendant has selectively

enforced the state's charity bingo laws pretextually under a draconian (and arguably repealed) public nuisance law, targeting the operations of electronic bingo in Greene County while leaving other similar operations unchallenged.

100. There is no evidence that the charity bingo operations in Greene County have created any public harm. In fact, the operations have become the primary economic driver in the county, funding vital public services like hospitals, emergency services, and local infrastructure.

101. The charity bingo, electronic bingo, and the electronic bingo marking machines used by charities in Greene County substantially involve interstate commerce, as many patrons are residents of neighboring states, the machines and their components are manufactured out of state, significant out-of-state capital flows into the local economy as part of the operations and back out to pay vendors outside Greene County and Alabama, and the impacted charities and public services serve residents of Alabama and residents of other states as well.

102. The Defendant's selective enforcement of charity electronic bingo laws against bingo operations in Greene County and as applied to Sheriff Benison, while permitting other entities (including operators in Houston County and Morgan County) to engage in similar operations, negatively impacts interstate commerce and constitutes a violation of the Dormant Commerce Clause of the Constitution.

103. The Dormant Commerce Clause prohibits state laws and practices that discriminate against certain individuals/groups or unduly burden interstate commerce. In this case, the selective enforcement by the Defendant is unconstitutional and violates the Dormant Commerce Clause for at least the following reasons:

   a. There are no putative benefits derived from the Defendant's selective enforcement actions and, in fact, the enforcement actions undermines the constitutional grant of authority by which bingo is played on electronic marking machines in Greene County, oppresses the political will of the citizens of Greene County, and threatens the only viable means of generating funding for vital community needs such as hospitals, education, first responders, and various local charities;

   b. The Defendant's selective enforcement actions serve no legitimate governmental interests and is being selectively applied to harm African American residents of Greene County while ignoring indistinguishable gaming machines in Caucasian Houston County, Caucasian Morgan County, a Caucasian-owned facility in Macon and Jefferson Counties.

   c. The Defendant's efforts rid of Alabama of this alleged nuisance will never be complete since he lacks authority over the Poarch Band Creek

of Indians Tribal Reservation where the three largest and most profitable operations continue unabated.

d.  Upon information and belief, the Poarch Band of Creek Indians has acquired the Birmingham Race Track in Jefferson County and will soon expand its operations off of tribal land.

e.  The Defendant's hypocritical stance reveals a discriminatory motive that, so long as you are not Black, you can engage in activity virtually indistinguishable from that being conducted by the *Pen Tech* charity defendants in Greene County.

f.  The burden imposed upon commerce in Greene County resulting from the Defendant's selective enforcement of actions is excessive and puts Sheriff Benison, Greene County charities, and Green County charity bingo operators at a competitive disadvantage relative to Indian Tribal gaming operations, the white-owned facilities in Macon, Jefferson, and Greene Counties, and the Caucasian Houston County and Caucasian Morgan County as it relates to their charity bingo and related charities.

g.  The Defendant treats actors operating indistinguishable electronic gaming machines differently, and for arbitrary reasons. Moreover, given the high incidence of poverty and low economic growth, the

actions disproportionately affect the people of Greene County and surrounding areas (AL, MS, LA, etc.).

104. The Defendant's actions discriminate against Sheriff Benison and unduly burden interstate commerce by allowing certain operators (such as those on Indian reservations, Houston County and Morgan County) to conduct charity electronic bingo operations without interference while selectively targeting Sheriff Benison and certain operations in Greene County. These actions create an unfair competitive advantage for other entities and place a straitjacket on Sheriff Benison that is immediate and irreparable. In the aggregate and over time, Defendant's action would increasingly burden regional electronic bingo and disrupt the market for electronic gaming and related equipment to benefit a few hand-picked members of an oligopoly.

105. The unconstitutional enforcement of the charity bingo laws against Sheriff Benison and Greene County shuts down Sheriff Benison and certain Greene County essential services and charitable organizations and further imposes an undue burden on interstate commerce by disproportionately affecting out-of-state electronic bingo players by eliminating bingo in Greene County, various gaming manufacturers, suppliers, hospitality market players, and operators involved in the electronic bingo industry.

106. The Defendant's usurpation of the authority vested with Sheriff Benison and reserved to him by the Alabama Constitution to restrict Greene County bingo operations in a manner not applied to similarly situated entities in white counties or operated by white operators, discourage interstate trade, stifles economic activity in a depressed market, reduces travel, and suppresses investment in electronic bingo machines and related products.

107. There is no legitimate state interest that justifies the discriminatory enforcement against Sheriff Benison and the Greene County charity bingo operations. Greene County's charity bingo operations, as regulated by Sheriff Benison, do not cause harm to the public and, in fact, support critical public services. The state's failure to enforce uniform laws across all counties and entities undermines the principles of fairness and equal treatment under the law.

108. The selective enforcement against Sheriff Benison and charity bingo operations in Greene County harms the public by disrupting the primary funding source for vital local services, including the healthcare market participants, patients, hospitals, and emergency services within Greene County. The economic harm proximately caused by Defendant's actions constitutes a public nuisance and an unconstitutional restriction on interstate commerce, as it interferes with the community's well-being and the effective functioning of public services for those who live in Greene County or visit Greene County.

109. Under the Dormant Commerce Clause, state laws or practices that discriminate against or unduly burden interstate commerce are subject to strict scrutiny. The Defendant's selective enforcement of charity bingo laws against Sheriff Benison while permitting similarly situated entities to operate freely constitutes both discrimination and an undue burden on interstate commerce.

110. This enforcement scheme usurps the constitutional authority solely vested in Sheriff Benison, undermines Greene County's economic vitality, and impedes interstate commercial transactions related to bingo gaming, electronic bingo machines, equipment, and capital.

111. Sheriff Benison claims all damages allowable under law.

### COUNT V-VIOLATION OF DUE PROCESS (SUBSTANTIVE) UNDER 42 U.S.C. § 1983 AGAINST THE DEFENDANT IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES
*(Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972))*

112. Sheriff Benison adopts, realleges, and incorporates by reference paragraphs 1-49 as if fully set forth herein.

113. The Defendant has engaged in the discriminatory and unlawful enforcement of Alabama's bingo laws in a manner that deprives Sheriff Benison of his protected substantive due process rights to administer on behalf of the people of Greene County a lawful business under the Fourteenth Amendment. The substantive due process clause protects liberty and property interests against discriminatory state action. The Defendant's actions have violated Sheriff

Benison's constitutional right to exercise his authority over bingo regulation in Greene County and the right of the people of Greene County to the services of Sheriff Benison to operate under the rule of law without interference from state officials.

114. The Defendant's actions have created an imminent threat that necessary medical services will be permanently halted, the administration of local governmental services will be reduced, funding for social service groups and charitable organizations will be cut, and the only viable means of economic activity for a perpetually impoverished County and region will be permanently stalled.

115. Sheriff Benison claims all damages allowable under law.

### COUNT VI-VIOLATION OF DUE PROCESS (PROCEDURAL) UNDER 42 U.S.C. § 1983 AGAINST THE DEFENDANT MARSHALL IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES
***Mathews v. Eldridge*** 424 U.S. 319 (1976) and ***Roth***

116. Sheriff Benison adopts, realleges, and incorporates by reference paragraphs 1-49 if fully set forth herein.

117. The Defendant has failed to provide Sheriff Benison with adequate procedural protections before interfering with his property and liberty interests and the performance of his lawful duties on behalf of the people of Greene County, violating his rights to procedural due process under the Fourteenth Amendment.

Mathews v. Eldridge 424 U.S. 319 (1976) and *Roth* The Defendant has taken

actions to undermine and obstruct the performance of Sheriff Benison's constitutional duties, including through wrongful legal proceedings and other efforts to strip him of his authority and the people of Greene County of his services as sheriff.

118. As the duly elected sheriff of Greene County, Sheriff Benison is a member of the Executive Department of the State of Alabama (Section V. Art. 112 Ala. Const.) and has the sole authority to regulate charity bingo in Greene County (C.A. 743).

119. The Defendant's use of police powers to pursue public nuisance claims against Sheriff Benison and Greene County is an abuse of power. As applied here, this does not afford adequate process for the Plaintiff and cannot be used as a basis for amending C.A. 743.

120. After years of persecution and discrimination, these ongoing actions undermine Sheriff Benison's authority, defame his character, reputation, and goodwill in the community, oppress the political will of the citizens of Greene County, suppress needed economic activity (including direct and indirect revenue from charity bingo), and threaten the financial viability of necessary services performed by hospitals, healthcare providers, the county commission, and emergency responders.

121. Sheriff Benison claims all damages allowable under law.

## COUNT VII-RACIAL DISCRIMINATION AND INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS UNDER 42 U.S.C. § 1985 AGAINST THE DEFENDANT IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES

122. Sheriff Benison adopts, realleges, and incorporates by reference paragraphs 1-49 as if fully set forth herein.

123. Sheriff Benison is an African American male and his roles, duties, powers, and privileges as the duly elected Sheriff of Greene County are enumerated in the Alabama Constitution, namely (Section V. Art. 112 Ala. Const.) and (C.A. 743).

124. As Sheriff of Greene County, Sheriff Benison is charged with negotiating, procuring, and entering various contracts, agreements, and promises relating to the regulation and operation of charity bingo in Greene County.

125. The Defendant's racially discriminatory actions have interfered with Sheriff Benison's contractual relationships, including relationships with recipients of charitable bingo organizations, non-profit organizations, Greene County Hospital, and local public health and emergency service providers in Greene County, constituting an abuse of power and numerous violations of 42 U.S.C. §1985.

126. The Defendant has intentionally discriminated against Sheriff Benison and the people of Greene County by selectively enforcing laws against bingo operations in the predominantly African American communities of Greene County, while similarly situated white communities are treated differently.

127. The Defendant's actions have also interfered with Sheriff Benison's regulatory authority under C.A.743, which gives Sheriff Benison the exclusive authority to regulate and license bingo in Greene County. The Defendant's interference is based on racial animus and constitutes a violation of a clearly established right under 42 U.S.C. §1985.

128. Sheriff Benison claims all damages allowable under law.

## COUNT VIII – RETALIATION UNDER 42 U.S.C. § 1985 AGAINST THE DEFENDANT IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

129. Sheriff Benison adopts, realleges, and incorporates by reference paragraphs 1-49 as if fully set forth herein.

130. The Defendant has engaged in a pattern of selective enforcement actions against Sheriff Benison that constitute retaliation. The Defendant's adverse actions occurred after Sheriff Benison engaged in protected activity and include at least Sheriff Benison's advocacy for equal protection of law for Greene County citizens and specific challenges to the discriminatory enforcement practices in the *Pen-Tech* case.

131. Sheriff Benison's protected activity involved at least the following actions listed below.

    a. Asserting affirmative defenses in the *Pen-Tech* case.

45

b. Submitting formal complaints against the Defendant and the Defendant's selective enforcement actions to the judiciary and directly to the Attorney General's office through counsel;

c. Filing a legal brief and memorandum of law through counsel that sets forth the implications for Equal Protection violations arising from the Defendant's selective enforcement actions and prosecution of the *Pen-Tech* case against Sheriff Benison and Greene County.

d. Advocating in public forums, legislative body meetings, and directly to the Attorney General's office for the public interests served by the charity bingo in Greene County, including the need for continued funding for Greene County's charitable organizations, sole hospital, and impacted healthcare providers.

132. The Defendant's actions are unlawful retaliatory acts designed to suppress Sheriff Benison's exercise of authority and constitutionally defined rights and duties, including at least the following listed below:

a. Naming Sheriff Benison as a Defendant in the *Pen-Tech* case but not naming the similarly situated comparator Sheriff of Houston County as a Defendant.

b. Publicly referring to the operation of electronic bingo gaming machines in Greene County as constituting a menace to public health, morals,

safety, and welfare while collecting fees and taxes from indistinguishable gaming machines operated on tribal lands, Houston County, and Morgan County.

c. Refusing to respect the constitutional authority vested in Sheriff Benison to regulate charity bingo, including electronic gaming, in Greene County as promulgated by C.A. 743.

d. Refusing to negotiate or propose remedial actions to facilitate a settlement with Sheriff Benison and for the benefit of the impacted charities, hospital, and emergency service providers.

133. Sheriff Benison claims all damages allowable under law.

WHEREFORE, Sheriff Benison asks this Court for the following relief:

A) Issue an immediate preliminary injunction enjoining the Defendant from interfering with or closing bingo operations in Greene County on any pretext as requested in the accompanying Motion;

B) Issue a declaratory judgment recognizing that Sheriff Benison is the sole regulator of bingo operations in Greene County pursuant to local amendment and that any attempt to interfere with or usurp Sheriff Benison's authority violates federal law;

C) Declare that the actions of the Defendant violated 42 U.S.C. § 1983;

D) Declare that the actions of the Defendant violated 42 U.S.C. § 1985;

E) Declare that the actions of the Defendant violated the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3.

F) Enter a permanent injunction against the State of Alabama prohibiting it from interfering with Greene County's lawful bingo operations; and

G) Award to Sheriff Benison and against the Defendant a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

H) Issue any other relief that this Court deems appropriate.

Respectfully Submitted,

**/s/ Troy King**
Troy King (KIN047)
Counsel for Sheriff Joe Benison

THE LAW OFFICES OF TROY KING
38 Monroe Street
Montgomery, Alabama 36104
Ph: (334) 215-4440
troy@troykinglaw.com

**/s/Abbey Clarkson**
Abbey Clarkson
ASB2705A63M
Counsel for Sheriff Joe Benison

CLARKSON PENNINGTON LAW, LLC
PO Box 681683
Fort Payne, AL 35968
Ph: (256) 638-3323
Fax: (205) 206-6878

abbey@theclarksonfirm.com

**/s/Richard A. Rice**
Richard A. Rice
ASB8387I66R
Counsel for Sheriff Joe Benison

THE RICE FIRM, LLC
115 Richard Arrington Jr. Blvd. North
Birmingham, AL 35203
Ph: (205) 618-8733
Fax: (888) 391-7193
rrice@rice-lawfirm.com

**/s/Flint Liddon**
Flint Liddon
ASB 9019N75J
Counsel for Sheriff Joe Benison

Morgan Morgan & Liddon
1603 Richard Arrington Jr. Blvd South
Birmingham, Alabama 35205
flint@psconsultinc.com

**SERVE THE FOLLOWING DEFENDANT BY CERTIFIED MAIL:**

Steve Marshall
c/o The Alabama Attorney General's Office
501 Washington Avenue
Montgomery, AL 36104